IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-mc-00105-JWB-GEB |
| | ) | |
| LESLIE A. WULF, BRUCE A. HALL, | ) | |
| JAMES REA, JOHN REA, and | ) | |
| KEITH DRIVER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Non-Party Roy Baker's Motion to Quash Subpoena ("Motion to Quash") (**ECF No. 1**) and Defendant's Expedited Motion to Compel Third Parties Roy Baker, Broadmoor Financial, L.P., and LodgeWorks Partners, L.P. to Comply with Subpoena ("Motion to Compel") (**ECF No. 5**). After careful consideration of the parties' briefing, and for the reasons set forth below, the Court **DENIES** the **Motion to Quash** and **GRANTS in part and DENIES in part** the **Motion to Compel**.

Non-Party Roy Baker seeks to quash a subpoena issued from the United States District of Court, Northern District of Texas, Dallas Division ("N.D. TX"), served upon him in Wichita, Kansas, compelling his attendance at a deposition to be taken by Zoom. Defendants seek to compel the production of documents pursuant to subpoenas also issued from N.D. TX to non-parties Roy Baker, Broadmoor Financial, L.P. ("Broadmoor"), and LodgeWorks Partners, L.P. ("LodgeWorks") (collectively the "Third Parties"). The

production of documents all to occur in Wichita, Kansas prior to the deposition of Roy Baker. These motions will each be addressed in turn.

## I.    Factual and Procedural Background[1]

Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John Rea, and Keith Driver (the "Founders"), founded Plaintiff, VeroBlue Farms USA, Inc. in 2014. Plaintiff operated an indoor fish farming business with production facilities in Iowa. The Founders managed Plaintiff's business and were in operational control until November 6, 2017, when Defendant Leslie Wulf was fired. By January 2018, all of the Founders had been fired. Plaintiff filed suit against the Founders in the United States District Court for the Northern District of Iowa on July 31, 2018 and the case was transferred to the N.D. TX on March 18, 2019. Plaintiff alleges the Founders squandered over $90,000,000 of Plaintiff's debt and equity causing Plaintiff to file for Chapter 11 bankruptcy in September 2018.

The Founder's alleged misconduct falls into two overarching categories: 1) misappropriation of Plaintiff's cash and other assets; and 2) fraudulent misrepresentations of Plaintiff's performance metrics and finances while concealing contrary information from Plaintiff's independent officers and board members. Plaintiff seeks at least $90,000,000 plus punitive damages from the Founders. Its claims sound in breach of

---

[1] Unless otherwise indicated, the information recited in this section is taken from Complaint (N.D. TX ECF No. 1), Third Amended Complaint (N.D. TX ECF No. 296), Non-Party Roy Baker's Memorandum in Support of Motion to Quash (ECF No. 2), Defendants' Opposition to Roy Baker's Motion to Quash Subpoena (ECF. No. 3), Memorandum in Support of Defendants' Expedited Motion to Compel Third Parties Roy Baker, Broadmoor Financial, L.P. and LodgeWorks Partners, LP. to Comply with Subpoenas (ECF No. 6), Response in Opposition to the Defendants' Motion to Compel (ECF No. 9), and the Founders' Notice of Errata (ECF No. 11). This background information should not be construed as judicial findings or factual determinations.

fiduciary duty, fraudulent concealment, fraudulent misrepresentation, constructive fraud, civil conspiracy, unjust enrichment, violations of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, and various Iowa and Texas state law claims. In addition to monetary damages, Plaintiff seeks an equitable accounting and recission of certain termination and employment agreements.

The Founders allege Plaintiff's failure was due, at least in part, to the actions of Alder Aqua, Ltd., Plaintiff's current shareholder; Amstar Group, LLC ("Amstar"), Plaintiff's one time leader; and Otto Happel, a German investor who controls Plaintiff, Alder Aqua, Ltd., and Amstar. Although Mr. Baker is not a party to the N.D. TX case, he, Broadmoor, and possibly LodgeWorks do have some connection to the claims in the case. Mr. Baker is the resident agent of both Broadmoor and LodgeWorks. Broadmoor and LodgeWorks share the same office space and have some commonality in ownership. In December 2017, Broadmoor purchased a loan Amstar made to Plaintiff. The Founders allege the damages Plaintiff seeks were actually incurred by third parties, including unpaid loan amounts to Broadmoor.

Plaintiff filed for Chapter 11 bankruptcy in the Northern District of Iowa ("N.D. Iowa") in September 2018. The bankruptcy court confirmed Plaintiff's plan of reorganization over the objection of the Founders. The Founder's objection was related to a proposed release in Plaintiff's plan to preserve the defenses and claims of the Founders in the N.D. TX case.

Discovery in the N.D. TX case began in November 2018 and, after extension, closed on June 17, 2022. On April 22, 2022, less than two months prior to the close of discovery,

the Founders issued a subpoena to Roy Baker for him to appear for a deposition on May 23, 2022 and three subpoenas to the Third Parties for the production of documents prior to Mr. Baker's deposition. Non-party Roy Baker moves to quash the deposition subpoena and the Founders move to compel the subpoenas for documents issued to the Third Parties.

## II.      Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel have "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Based upon the certification of  counsel, the Court finds the parties have sufficiently complied with D. Kan. Rule 37.2.

## III.     Motion to Quash Subpoena (ECF No. 1)

### A.      Parties' Positions

Mr. Baker moves to quash the deposition subpoena on the grounds it imposes undue burden and expense, fails to allow reasonable time to comply, and is an attempt to obtain privileged and confidential information. The Founders allege Mr. Baker's motion does not meet the burden to quash a subpoena on any of the grounds alleged. The Court will review each of Mr. Baker's objections in turn.

### B.      Discussion

#### i.      Undue Burden and Failure to Allow Reasonable Time to Comply

Mr. Baker's arguments the deposition subpoena imposes an undue burden and fails to allow a reasonable time to comply both stem from the fact the subpoena ordered his appearance on May 23, 2022, when he and his wife were returning from a vacation which

had been planned and booked since some time in 2020. Therefore, these arguments will be addressed together.

Fed. R. Civ. P. 45 governs subpoenas. Rule 45 requires the "court for the district where compliance is required" to quash or modify a subpoena that fails to allow a reasonable time to comply or subjects a person to undue burden.[2] Mr. Baker alleges the Founders did not follow the District's Deposition Guidelines and failed to take reasonable steps to avoid imposing an undue burden or expense on him where they did not consult his counsel to coordinate the date of his appearance and set it on a day when he was returning from a long planned trip. Similarly, he argues because of the planned vacation, the subpoena does not give Mr. Baker a reasonable time to comply. The Founders advise the Court when the parties conferred, their counsel offered to reschedule Mr. Baker's deposition for a time after he returned from vacation. And they argue, the subpoena issued 31 days prior to the date of the deposition gave Mr. Baker a reasonable time to comply.

The District's Deposition Guidelines set forth the ground rules for parties taking depositions in this District.[3] Regarding scheduling of depositions, the Guidelines provide:

> Absent extraordinary circumstances, counsel shall consult in advance with opposing counsel and proposed deponents in an effort to schedule depositions at mutually convenient times and places.[4]

---

[2] Fed. R. Civ. P. 45(d)(3)(A)(i) & (iv).

[3] *In re EpiPen*, No. 17-md-2785-DDC, 2018 WL 6617105, at *1 (D. Kan. Dec. 14, 2018) ("These Guidelines aren't aspirational….To the contrary, the Guidelines augment our local rules and provide ground rules for an integral piece of the modern federal lawsuit.")

[4] District of Kansas Deposition Guidelines 3, http://ksd.uscourts.gov/index.php/deposition-guidelines/.

But where the Founders offered to reschedule the deposition to a time after Mr. Baker returned from vacation, the Court does not find the deposition subpoena subjected Mr. Baker to an undue burden and will not quash the subpoena on this basis.

The Court finds the deposition subpoena gave Mr. Baker a reasonable time to comply. Fed. R. Civ. P. 30(b)(1) requires party who wants to depose a person to give reasonable written notice. D. Kan. R. 30.1 defines the reasonable notice provision in Rule 30(b)(1) as seven days.[5] Where the subpoena was issued on April 22, 2022, the deposition was not scheduled until May 23, 2022, and the Founders offered to move the deposition to a time after Mr. Baker returned from vacation, Mr. Baker had sufficient time to comply and the Court will not quash the deposition subpoena on this basis.

### ii.    Attempt to Obtain Privileged or Other Protected Information

Mr. Baker alleges the deposition subpoena must be quashed because it requires the disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(3)(A)(iv) provides "[o]n a timely motion, the court for the district where compliance is required must quash or modify a subpoena that...requires disclosure of privileged or other protected matter, if no exception or waiver applies…." Mr. Baker anticipates he will be asked about Broadmoor's acquisition of the loan from Amstar. Broadmoor was represented by counsel in the loan transaction and Mr. Baker alleges "part of the due diligence efforts are protected by the attorney-client privilege and work product doctrine." He also alleges the N.D. Iowa

---

[5] D. Kan. R. 30.1.

bankruptcy court quashed similar discovery and is concerned the subpoena is an attempt to obtain discovery for use in the bankruptcy case.

The Founders argue the deposition should be allowed to proceed where Mr. Baker can raise objections to specific questions on the basis of privilege. The Founders also argue Mr. Baker's argument regarding the bankruptcy proceedings is a red herring.

Taking the second issue first, the Court is inclined to agree the Founders' argument in this regard has merit.[6] First, although discovery similar to that sought here was not permitted in the bankruptcy, the bankruptcy court found the motions to quash as moot after it decided an ad hoc committee of equity security holders did not have standing to pursue adversary proceedings against certain third parties, including Broadmoor.[7] The court stated "I guess all that being said, I have enough questions about the participation of the equity security committee as configured now and the position it's taking to, again, weigh in favor of the majority view of those participating that it's time to move forward in this case without further discovery or further delay."[8] The fact the bankruptcy court found it was

---

[6] The Court acknowledges the Third Parties argument the Founders, in their briefing, alleged they were not parties to the bankruptcy. The Court has reviewed the Founder's Notice of Errata and take counsel at their word regarding when they learned the Founders filed an objection to Plaintiff's Chapter 11 plan.

[7] Tr. of Motion for Entry of Order Confirming Standing to File and Prosecute Adversary Complaint Against Broadmoor Financial, LP, Amstar Group, LLC, Alder Aqua, LLC, Otto Hampel, Jens Haarkoetter, Eval Happel Ebstein, Norman McCowan and Bjorn Thelander Filed by Ad Hoc Committee of Equity Security Holders of VeroBlue Farms and Motion to Quash Filed by VeroBlue Farms USA, Inc. – ECF No. 2, at pp. 65-67.

[8] *Id.,* at p. 65, ll. 12-17.

time to move its case forward without further discovery, does not necessarily mean similar discovery should not be permitted in another case.

Second, while it is possible there may be some overlap between the issues in the bankruptcy case and those in the N.D. TX case, for the reasons below, the Court finds the information sought in the subpoenas is relevant to the claims and defenses in N.D. TX case and therefore discoverable. It is well settled the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34.[9] Pursuant to Fed. R. Civ. P. 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[10] Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on" any party's claim or defense.[11] "Information within this scope of discovery need not be admissible in evidence to be discoverable."[12] Discovery should be allowed

---

[9] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D. Kan. 2003).
[10] Fed. R. Civ. P. 26(b)(1).
[11] Williams v. UnitedHealth Grp., No. 18-2096-HLT, 2020 WL 528604, at *1 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.,* No. 16-2416-JAR, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).
[12] Fed. R. Civ. P. 26(b)(1).

"unless *it is clear* that the information can have *no possible* bearing" on the claims or defense of a party.[13]

In the N.D. TX case, Plaintiff sued the Founders alleging they squandered over $90,000,000 of Plaintiff's debt and equity causing Plaintiff to file for Chapter 11 bankruptcy in September 2018. The Founders respond alleging Plaintiff's business failure was due, at least in part, to the actions of others, including certain shareholders and Plaintiff's one time leader, Amstar. In December 2017, Broadmoor purchased a loan made to Plaintiff by Amstar (the "Amstar Loan"). The Founders contend the damages Plaintiff seeks were actually incurred by third parties, including unpaid loan amounts to Broadmoor.

The Founders seek to have Mr. Baker and others produce certain documents and then seek Mr. Baker's deposition testimony regarding same. The documents and communications sought are related to Broadmoor's purchase of the Amstar Loan, including its due diligence, negotiations, and the loan agreement between Plaintiff, Iowa's First Inc., and Broadmoor. Among other things, the financial condition of Plaintiff is at issue in the N.D. TX case. What Amstar represented to Broadmoor about the financial condition of Plaintiff in the course of their negotiations for the purchase of the Amstar Loan, what Broadmoor learned about same as it conducted its due diligence, and what Broadmoor might have paid for the loan based on Plaintiff's financial condition are all relevant to the Founders' defenses.

---

[13] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citing *Scott v. Leavenworth USD No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (emphasis in original)).

Turning to the issue of privilege, Mr. Baker bears the burden of establishing the deposition subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies."[14] Not all communications involving attorneys are privileged.[15] The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[16] "Legal advice must predominate for the communication to be protected."[17] And the attorney client privilege "does not protect facts communicated to an attorney" or allow a client to "refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources."[18] "It is well-established in this District that blanket claims of attorney-client privilege or work product protection do not satisfy the objecting party's burden of proof."[19]

Mr. Baker anticipates being asked about Broadmoor's acquisition of the loan from Amstar. He alleges Broadmoor was represented in the transaction by counsel and part of Broadmoor's due diligence efforts in the transaction are protected by the attorney client privilege and work product doctrine. Mr. Baker's blanket claims of attorney client privilege

---

[14] *Sloan v. Overton,* No. 08-2571-JAR, 2010 WL 3724873, at *1 (D. Kan. Sept. 17, 2010) (citing *Sentry Ins. v. Shivers,* 164 F.R.D. 255, 256 (D. Kan. 1996) ("Movants, in seeking to quash the subpoenas, have the burden to demonstrate good cause and the privilege to be protected."). *See also Marten v. Yellow Freight System, Inc.,* No. 96-2013-GTV, 1998 WL 13244, *4 (D. Kan. Jan. 6, 1998) (Party asserting an objection to attorney client privilege or work product immunity bears the burden of establishing that either or both apply.).

[15] *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550-51 (10th Cir. 1995).

[16] *Marten*, 1998 WL 13244, at *6. *See also* K.S.A. § 60-426.

[17] *Taylor v. LM Ins. Corp.*, No. 19-1030-JWB, 2019 WL 5696861, at *5 (D. Kan. Nov. 4, 2019).

[18] *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 529 (D. Kan. 2006).

[19] *Ensmigner v. Credit Law Ctr., LLC,* No. 19-2147-JWL, 2020 WL 409730, at *2 (D. Kan. Jan. 24, 2020) (citing *Kemp v. Hudgins*, No. 12-2739-JAR, 2013 WL 4857771, at *2 (D. Kan. Sept. 10, 2013)).

or work product protection are not sufficient to meet his burden of proof to show what information potentially sought in his deposition would be privileged. The Court will not quash the deposition subpoena on the basis it seeks privileged or otherwise protected information.

### iii.    Attempt to Obtain Trade Secret or Other Confidential Research, Development, or Commercial Information

Unlike the provisions of Fed. R. Civ. P. 45(d)(3)(A) which requires a court to quash a subpoena in the enumerated circumstances, Fed. R. Civ. P. 45(d)(3)(B) provides a court may quash or modify a subpoena if it requires the disclosure of trade secret or other confidential information. Mr. Baker argues information related to Broadmoor's acquisition of the loan from Amstar, the amount Broadmoor paid for the loan, and related information is private and highly confidential and cannot be allowed to become public. The Founders argue, and the Court agrees, confidentiality does not shield otherwise discoverable information from disclosure. The Founders also argue the protective order entered in N.D. TX will protect any highly confidential information.

It is well established in the Tenth Circuit, "[t]here is no absolute privilege for trade secrets or similar confidential information."[20] The standards under Fed. R. Civ. P. 26(c) for granting a protective order apply when determining whether to quash a subpoena under

---

[20] *In re Syngenta AG MIR 162 Corn Litig.,* No. 14-2591-JWL, 2017 WL 1106257, at *11 (D. Kan. Mar. 24, 2017) (citing *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979)).

Rule 45(d)(3)(B)(i).[21] Mr. Baker has the burden to show the information sought is confidential and its disclosure "will result in a clearly defined and serious injury."[22] Serious injury "includes competitive harm that results from disclosure."[23] To demonstrate such an injury, Mr. Baker must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[24]

As discussed above, Mr. Baker argues information related to Broadmoor's acquisition of the loan from Amstar, the amount Broadmoor paid for the loan, and related information is highly confidential and cannot be allowed to become public. Mr. Baker's conclusory statements do not establish the information sought is confidential and fail to make any demonstration of injury to Broadmoor were the information sought to become public. Courts frequently deny motions to quash seeking confidential information or overrule objections based on confidentiality where there is a protective order in place that will prevent the misuse of the information.[25] The Protective Order in the N.D. TX case[26] applies to documents produced by non-parties, limits use to the preparation for and trial of the N.D. TX case, and allows for the designation of document as Attorney's Eyes Only.

---

[21] *Lawson v. Spirit AeroSystems, Inc.,* No. 18-1100-EFM, 2020 WL 243598, at *5 (D. Kan. Jan. 16, 2020) (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d 323, 325-26 (10th Cir. 1981)).

[22] *Id.* (citing *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592 (D. Kan. 2003)).

[23] *Id.* (citing *In re Syngenta AG MIR 162 Corn Litig.,* at *12).

[24] *Id.*

[25] *Lawson* at *6; *Rios v. Ramage,* No. 19-2602-JWB, 2020 WL 6701206, at *6 (D. Kan. Nov. 13, 2020); *D.M. by & through Morgan v. Wesley Med. Ctr. LLC,* No. 18-2158-KHV, 2019 WL 2250220, at *4 (D. Kan. May 24, 2019); *MNM Invs., LLC v. HDM, Inc.,* No. 18-1267-EFM, 2020 WL 1873603, at *3 (D. Kan. Apr. 15, 2020).

[26] N.D. TX ECF No. 112.

The Court will not quash the deposition subpoena on the basis it seeks confidential information.

Having addressed and rejected all objections raised, the Court will not quash the deposition subpoena to Mr. Baker. If the N.D. TX court will allow the deposition to go forward now that discovery has closed, it is this Court's expectation counsel will follow the District's Deposition Guidelines and work together to schedule Mr. Baker's deposition at a mutually convenient time and provide at least seven days' notice.

## IV.    Motion to Compel (ECF No. 5)

Before moving to the substance of the Founders' Motion to Compel, the Court must first address their request for expedited consideration. Discovery in the N.D. TX case was open for approximately three and a half years. The Founders filed a Notice to Issue Subpoena to Broadmoor on August 16, 2019, but did not move to compel that subpoena. Rather they waited and reissued subpoenas to the Third Parties on April 22, 2022, less than two months before the close of discovery on June 17, 2022. Then when the inevitable objection to the subpoenas came, the Founders filed their Motion to Compel on May 24, 2022. The Court set a shortened briefing schedule for the parties and has moved with all due speed. However, with briefing complete on June 2, 2022 it was impossible to accommodate the Founders request. Where only two weeks remained before the close of discovery, there simply was not time to issue a formal decision on the motions, allow the Third Parties a reasonable time to produce the ordered document production, and for the crucial deposition to go forward before discovery closed. It is not known whether the N.D.

TX court will allow Mr. Baker's deposition to proceed after the documents are produced now that discovery is closed, but any difficulties in that regard, in this Court's opinion, are the fault of the Founders alone.

## A.    Parties' Positions

The Founders move to compel the production of documents pursuant to subpoenas served on the Third Parties. Each subpoena sets out the same four requests for production of documents. The Third Parties objected and refused to produce any documents in response. The Third Parties argue the Motion to Compel Broadmoor is not timely as the Founders served an earlier subpoena on Broadmoor and did not move to compel after Broadmoor objected to the subpoena. And as previously discussed with regard to the deposition subpoena, the Third Parties argue the decision of the N.D. Iowa bankruptcy court finding certain discovery was not permitted to go forward in that case should prevent similar discovery being sought in the N.D. TX action.

The Founders argue their motion to compel is timely; the objections raised by the Third Parties are boilerplate, conclusory, and do not meet the required  burden of proof; and the Third Parties' argument the decision of the bankruptcy court precludes the discovery in the N.D. TX case is improper.

**B.      Discussion**

**i.      Timeliness of Motion to Compel Broadmoor**

The Founders filed a Notice to Issue Subpoena to Broadmoor on August 16, 2019.[27] The subpoena contained thirteen requests for production. Broadmoor objected to the subpoena in its entirety on September 17, 2019.[28] The Founders filed the current Notice of Intent to  Issue Subpoena to Broadmoor on April 22, 2022. The second subpoena for business records seeks the production of a subset of documents which were previously requested in the original business records subpoena.[29]

D. Kan. R. 37.1(b) provides "[a]ny motion to compel discovery…must be filed and served within 30 days of the default or service of response, answer, or objection that is the subject of the motion….Otherwise, the objection to the default, response, answer, or objection is waived." Pursuant to D. Kan. R. 37.1(b), the deadline for the Founders to move to compel Broadmoor to produce documents pursuant to the initial business records subpoena ran on October 21, 2019. Neither was an extension of time sought, nor a motion to compel filed. Instead, approximately two and a half years after their deadline to file a motion to compel on the initial subpoena, the Founders issued a new subpoena which requested some of the same documents sought in their original subpoena.

D. Kan. R. 37.1, by its express language, does not explicitly address the situation here, where a party serves a business records subpoena which draws an objection and rather

---

[27] ECF No. 6-7.

[28] ECF No. 9-5.

[29] Compare ECF No. 6-7, RFP Nos. 1-5 and 13 with ECF. No. 9-5, RFP Nos. 1-4.

than file a motion to compel, serves a second business records subpoena seeking similar information as the first subpoena. The parties identified the one case in the District which has dealt with a similar situation, *Payless Shoesource Worldwide, Inc. v. Target Corp.*[30]

In *Payless*, Plaintiff filed a 30(b)(6) deposition notice on May 1, 2006 which Target objected to on May 11, 2006. Rather than move to compel Target, Payless filed a motion to stay its 30(b)(6) deposition and to extend discovery.[31] The court granted the motion and extended discovery, at least in part because Plaintiff wished to take Target's 30(b)(6) deposition. Plaintiff later served an amended deposition notice which Target again objected to. Target, however, did not object that Payless' failure to move to compel the first notice barred Payless from submitting its subsequent deposition notice.[32] After conferral, Payless filed a motion to compel on September 21, 2006.

The court, in *Payless*, discussed the "tension between meaningful enforcement of D. Kan. R. 37.1(b) and unnecessarily chilling discovery," but noted D. Kan. R. 1.1 provides the local rules "[s]hall, in special cases, be subject to modification as the court may deem necessary or appropriate to meet emergencies or to avoid injustice or great hardship."[33] Based on the facts in that case, where the parties had continued to discuss the depositions after the deadline to file a motion to compel had passed and Payless reasonably believed the court's order granting its motion to stay the depositions and extend the discovery cutoff

---

[30] No. 05-4023-JAR, 2006 WL 6225139 (D. Kan. Nov. 17, 2006).
[31] *Id.*, at *2.
[32] *Id.*
[33] *Id.*

would allow the deposition to proceed, the court overruled Target's Rule 37.1 procedural objection.

This Court does not read *Payless* as finding D. Kan. R. 37.1 permits parties to routinely reissue discovery as a way to get around the 30 day deadline to file a motion to compel set out in the rule. Since the court's ruling in *Payless* in 2006, this Court finds no other court that cites it for that proposition. Instead, this Court believes the court in *Payless*, based upon the unique facts in that case, used D. Kan. R. 1.1 to modify the deadline in D. Kan. R. 37.1(b) to overrule the procedural objection to the motion to compel and move on to address the substantive of the objections to the deposition.

Here, where the Founders moved to compel Broadmoor to produce documents also sought in their original business records subpoena approximately two and a half years after the deadline to move to compel their first subpoena expired, the Court declines to rely upon D. Kan. R. 1.1 to modify the 30 day deadline in D. Kan. R. 37.1(b), and believes the Founders' motion is untimely. Although the parties do not address it, where the Court finds the motion to compel Broadmoor is untimely, under D. Kan. R. 37.1(b), the Court must consider whether the untimeliness should be forgiven because of excusable neglect. D. Kan. R. 6.1(a)(4) provides in relevant part "[p]arties must file the motion before the specified time expires" and "[a]bsent excusable neglect, the court will not grant extensions requested after the specified time expires." Whether a party has demonstrated excusable

neglect "rests on principles of equity."[34] A court should consider "all relevant circumstances surrounding the party's omission including: (1) the danger of prejudice; (2) the reasons for the delay including whether it was within the reasonable control of the movant; (3) the length of dely (sic) and its potential impact on judicial proceedings; and (4) whether the party acted in good faith."[35]

The Court does not find bad faith. And where there are identical subpoenas propounded to Mr. Baker and LodgeWorks, which the Court is inclined to allow to proceed, the Court does not find there is a danger of prejudice to either side. However, the Court finds the delay was within the reasonable control of the Founders and the great length of the delay weigh in favor of not forgiving the untimeliness of the Founders' motion.

The Founders provide no reason why they could not have commenced a miscellaneous action in November 2019 and filed a motion to compel then. Alternatively, the Founders could have filed a miscellaneous action at that time, sought an extension of time to work with Broadmoor to try to reach an agreement regarding the production of documents, and then filed a motion to compel by the extended deadline, if necessary. Instead, the Founders waited two and half years after the deadline to file a motion to compel; issued a new subpoena shortly before the deadline to close discovery ran; and being unable to reach an agreement with Broadmoor, filed the current motion to compel. The Court believes, due to the great length of time before filing a motion to compel when

---

[34] *Payless Shoesource Worldwide Inc., v. Target Corp.,* No. 05-4023-JAR, 2007 WL 1959194, at *5 (D. Kan. June 29, 2007) (citing *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, No. 05-4149-JAR, 2007 U.S. Dist. LEXIS 36315, at *12-13 (D. Kan. May 16, 2007)).
[35] *Id.* (citing *Bishop v. Corsentino,* 371 F.3d 1203, 1206-07 (10th Cir. 2004)).

the Founders apparently had it within their control to file a timely motion and the similar nature of the documents requested in the initial and current subpoenas, the delay should not be excused. The Court denies the Founders' motion to compel Broadmoor. Where the Founders also served subpoenas on Mr. Baker and LodgeWorks, the Court will now address the other objections made to the subpoenas.

### ii.     Objections to Subpoenas Served on Roy Baker and LodgeWorks

The Third Parties raised numerous objections to Requests for Production 1-4 in their May 6, 2022 letter. They also objected to the Definitions and Production Protocol sections of the subpoenas. Regarding Requests for Production 1-4, they objected to the following: 1) relevance; 2) the requests seek confidential and/or proprietary information; 3) the N.D. Iowa court quashed discovery aimed at Broadmoor, Amstar, and the purchase of the Amstar Loan; 4) the requests seek information which is protected by the attorney-client privilege or work product doctrine; 5) undue burden/fails to allow a reasonable time to comply; 6) proportionality; 7) the requests seek to impose a burden to search for documents from sources other than where they would be kept in the ordinary course of business; 8) the requests fail to describe the documents sought with particularity; 9) unclean hands; and 10) the requests seek communications after the timeframe relevant to Plaintiff's claims. The Court addressed the relevance, confidential and/or proprietary information, and bankruptcy court quashing similar discovery objections, *supra* and incorporates its ruling on those objections on the Motion to Quash here. It will address the remaining objections in turn.

### a.    Attempt to Obtain Privileged Information

The Third Parties allege Broadmoor was represented by counsel during the time it conducted its due diligence regarding the purchase of the Amstar Loan and through the loan acquisition period. They further allege the Founders' document requests are not limited to non-privileged information. The Founders' contend the Third Parties "boilerplate objections" and failure to provide a privilege log fail to meet the burden of proof. In response, the Third Parties, without citing any authority, allege it would have been unduly burdensome to require non-parties to prepare a privilege log. Broadmoor, one the Third Parties, when it responded to the August 16, 2019 subpoena it claims seeks the production of the same or similar documents as the current subpoenas, attached a privilege log to its September 17, 2019 objections.[36] Where Broadmoor prepared a prior log which could have been used as a starting point to log any privileged documents responsive to the Founder's narrowed requests here, the Court does not find it would have been an undue burden to produce a privilege log.

As set out above in paragraph III(B)(ii), *supra*, blanket claims of attorney-client privilege or work product protection are not sufficient to meet the burden of proof to show the documents and communications sought in Request for Production 1-4 would be privileged. Hereto, the Court finds the Third Parties have not meet their burden of proof. The Court overrules the Third Parties' objection that Request for Production 1-4 seek information protected by the attorney-client privilege or work product protection.

---

[36] ECF 9-5, at 23-25.

However, parties who withhold document production because of a claim of privilege or work product production must notify the other party of its withholdings.[37] Therefore, Baker and LodgeWorks shall produce a privilege log together with its document production for any materials they withhold on the basis of privilege.

### b.      Undue Burden and Fails to Allow a Reasonable Time to Comply

The subpoenas served on the Third Parties gave them 21 days to respond. They allege that is not a reasonable time to comply and poses an undue burden. The Court will consider these two objections together. Counsel for the Third Parties filed an affidavit. In it counsel estimates running the searches for responsive documents, reviewing them for privilege, and producing documents per the requested protocols would take 65 hours of paralegal time at a cost of approximately $10,905 and approximately 70 hours of attorney time at a cost of approximately $28,350.[38] Although counsel included in his estimate a two week vacation scheduled which has now passed, counsel anticipated the work would take approximately 2 months to complete.[39]

Fed. R. Civ. P. 45 (d)(1) requires the issuing party to "take reasonable steps to avoid imposing undue burden on a person subject to the subpoena." If, like here, an objection to the subpoena is filed, the Court's order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."[40] However, the Court

---

[37] *White v. Graceland College Ctr. for Pro. Dev. & Lifelong Learning, Inc.,* 586 F. Supp.2d 1250, 1266 (D. Kan. 2008).
[38] Affidavit of Shannon D. Wead, ECF No. 9-6, at 2.
[39] *Id.*
[40] Fed. R. Civ. P. 45(d)(2)(B)(ii).

recognizes compliance with a subpoena inevitably involves some measure of burden to a subpoenaed non-party.[41] Courts in this District will not deny a party access to relevant discovery because "compliance inconveniences a nonparty or subjects it to some expense."[42]

"Whether a subpoena imposes an undue burden upon a witness is a case-specific inquiry that 'turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[43] The Court must "balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."[44]

The Court believes the relevant factors weigh against a finding of undue burden. First, although Mr. Baker and LodgeWorks are non-parties, they are not unrelated to the issues in this case. Mr. Baker is the resident agent and purported principal of both Broadmoor and LodgeWorks. In December 2017, Broadmoor purchased a loan Amstar

---

[41] *XPO Logistics Freight, Inc. v. YRC, Inc.,* No. 16-MC-224-CM, 2016 WL 6996275, at *5 (D. Kan. Nov. 30, 2016), *objections overruled*, No. 16-MC-220-JWL, 2017 WL 67878 (D. Kan. Jan. 6, 2017).

[42] *Id.* (citing *Ficep Corp. v. Haas Metal Eng'g, Inc.,* No. 14-243-CM, 2015 WL 566988, at *3 (D. Kan. Feb. 11, 2015); *Booth v. Davis,* No. 10-4010-RDR, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.* 985 F.2d 1036, 1040 (10th Cir. 1993)).

[43] *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.,* No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008) (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.* No. 05-2164-MLB, 2007 WL 2122437, at *5 (D. Kan. July 20, 2007)).

[44] *Schneider v. CitiMortgage, Inc.,* No. 13-4094-SAC, 2014 WL 4749181, at *3 (D. Kan. Sept. 24, 2014) (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003)).

made to Plaintiff. Second, the Court, in § III(B)(ii) *supra,* found the information related to Broadmoor's purchase of the Amstar Loan, including its due diligence, negotiations, and the loan agreement between Plaintiff, Iowa's First Inc., and Broadmoor, relevant to the Founder's defenses in the N.D. TX case. Third, the subpoenas limit the relevant timeframe from January 1, 2017 to the present, but language of the requests seem to limit the timeframe even further. For example, Request for Production Nos. 1 and 2 limit the requests to documents prior to the execution of the "VBF" Loan Purchase Agreement and the loan purchase took place in December 2017 and Request for Production No. 4 seeks documents related to the negotiation of the "VBF" Loan Purchase Agreement. The Court finds the requests sufficiently limited in time. Fourth, based upon the Founders' definitions of Amstar Loan Documents, Broadmoor Loan Documents, and "VBF" Loan Purchase Agreement, the Court finds the requests stated with sufficient particularity. Last, the Court looks at the burden. The Court appreciates Mr. Wead's Affidavit and acknowledges the time to respond and the money it will cost are not insignificant. Nowhere in the parties briefing does anyone set out the amount of the loan Broadmoor purchased from Amstar. Based on the amounts at issue in the N.D. TX case with loans and equity investments well into the tens of millions at issue there, the Court is inclined to believe the loan is much greater than the $38,000 in approximate costs to respond to the subpoenas.

The Court overrules the Third Parties' objection of undue burden. The Founders ask the Court to order the production of responsive documents 10 days after the entry of its order. Based upon Mr. Wead's Affidavit, the Court finds that is not a sufficient time to

respond. The Court orders Mr. Baker and LodgeWorks to produce responsive documents together with privilege log for any documents withheld or redacted on the basis of privilege within 45 days of the entry of this order.

### c.     Objections not Addressed in Response to Motion to Compel

The Third Parties failed to address all of the objections they raised in their May 6, 2022 objection letter in their response to the Founders' Motion to Compel. Courts in this District have frequently found "objections initially raised but not relied upon in response to the motion [to compel] as abandoned."[45] The Third Parties' response does not rely on their objections regarding the Definitions and Production Protocol sections of the subpoenas and the following objections to the Request for Production 1-4: 1) proportionality; 2) the requests seek to impose a burden to search for documents from sources other than where they would be kept in the ordinary course of business; 3) the requests fail to describe the documents sought with particularity; 4) unclean hands; and 5) the requests seek communications after the timeframe relevant to Plaintiff's claims. The Court deems these objections to Requests for Production 1-4 as well as the objections to the Definitions and Production Protocol sections of the subpoenas abandoned.

---

[45] *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D. Kan. 1999); *see also DIRECTV, Inc. v. Puccinelli, Inc.,* 224 F.R.D. 677, 681 (D. Kan. 2004) (citing *Dolquist v. Heartland Presbytery,* 221 F.R.D. 564, 568 N. 16 (D. Kan. 2004) and *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC, 2015 WL 6158810, at *4 (D. Kan. Oct. 20, 2015) (citing *Moses v. Halstead,* 236 F.R.D. 667, 675-79 (D. Kan. 2006) and *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 642 (D. Kan. 2004)).

With the exception of Broadmoor's objection the Founders' motion to compel Broadmoor was untimely, the Court has overruled or found abandoned all objections raised by the Third Parties. The Court grants the Founders' motion as to Mr. Baker and LodgeWorks. Again, the Court orders Mr. Baker and LodgeWorks to produce responsive documents and a privilege log for any documents withheld or redacted on the basis of privilege within 45 days of the entry of this order. The Court above denied the motion as to Broadmoor. However, Mr. Baker as the resident agent and purported principal of Broadmoor must keep in mind Fed. R. Civ. P. 45 requires him to produce all documents in his possession, custody, or control. The reference to "possession, custody, or control" mirrors the language in Rule 34 where federal courts have found "'documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand.'"[46] "Production of documents in a party's possession is required if a party has the practical ability to obtain the documents from another, irrespective of legal entitlement to the documents."[47] Thus, Mr. Baker must produce responsive documents in his possession, custody, or control even if they are Broadmoor's documents.

---

[46] *B & K Mech., Inc. v. Wiese,* No. 03-4149-RDR, 2005 WL 8160222, at *3 (D. Kan. Nov. 10, 2005) (citing *Am. Maplan Corp. v. Heilmayr*, 179 F.Supp.2d 1249 (D. Kan. 2002)).
[47] *Id.*

V.      **Conclusion**

Based on the foregoing, the deposition of Roy Baker and production of documents shall be produced in accordance with the Court's rulings as noted above.

**THEREFORE,** the Non-Party Roy Baker's Motion to Quash **(ECF No. 1)** is **DENIED** and Defendants' Motion to Compel **(ECF No. 5)** is **GRANTED in part and DENIED in part** for the reasons set forth above.

**IT IS SO ORDERED**.

Dated July 19, 2022.


<u>s/ Gwynne E. Birzer</u>
GWYNNE E. BIRZER
U.S. Magistrate Judge